All rise. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Court is now open according to law. God save the United States of America. Good afternoon. Please be seated. We have one capital case to hear this afternoon. Number 25-10216, Clayton Antwain Shanklin v. Warden Holman CF. You're familiar with our lighting system. If the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, just keep on going. You'll be on our time and not yours. All right, Mr. Weibel. Correct. Thank you, Your Honor. May it please the Court. I am Peter Weibel. I'm here on behalf of Mr. Shanklin. Mr. Shanklin's 2011 capital trial ended with a unanimous jury recommendation for life without parole instead of death. Under Alabama law at the time, that recommendation had to be given great weight as a mitigating factor in the final sentencing determination, and any decision to override that recommendation had to be supported by specific reasons, and those specific reasons had to be supported by the record. Now, in this case, the override decision was supported by specific reasons in the judge's sentencing order, but those reasons themselves were not, as it turned out, supported by the record. And even if they were to be credited, the judge's account rests on a claim that he visited the jury without the party's knowledge and that he came away from that visit believing that the jurors had become,  unable to carry out their sworn legal obligation during sentencing. And then he just went back in the courtroom and allowed the penalty phase to continue in front of this now decidedly unfit jury without telling the parties and consequently without alerting Mr. Shanklin or his counsel that any verdict that might favor Mr. Shanklin would be discounted in the final sentencing analysis. There's nothing in the record, I take it, about the jury note or the jury query that prompted the judge's visit to the jury room? No, there's not. And the judge didn't put that note or that query on the record either? Not that I've been able to find. Not that, as far as I know, anyone who has litigated this case has been able to find. I couldn't find it either. No, and so the people closest to this would have been trial counsel. And the moment trial counsel found out about this, which was, of course, about five months after the fact, they immediately began objecting, saying, Judge, we didn't know anything about any of this. We were there. We didn't see or hear this. It's not on the record. We had no notice. So I think if anybody had been aware of it other than the judge. Did the trial judge put on the record at least what, forget the verbal, I mean forget the visual assessment of the jurors, but did the trial judge put on the record what he had said to the jurors when he went back into the jury room to respond to their question or their query or anything? No. None of this comes to light until nearly five months later when the final sentencing hearing, which was judge-only then under Alabama's scheme, was finally convened. And it's only at that point that the judge announces these findings and these observations that he attributes to this previously secret. No, I didn't mean contemporaneously, but later on when he explained on the record his reason for overriding the jury advisory verdict, did he put on the record the reasons that prompted him to go see the jury or go into the jury room? There's a brief description of it in the sentencing order, which was that the, so this appears at, where is it now? Volume 30-1, 89 and 90, I believe. The gist of it is that he indicated that one or more jurors had asked a bailiff whether the penalty phase proceeding would be public. And the bailiff then, or someone, summoned the judge, is what he says, and the judge went and had this conversation to answer this question about whether the proceeding would be public. And it was during that interaction that he says he made these observations, looks of consternation and so forth on the jurors' faces, which caused him to believe that the jury had become unfit to carry out its legal obligation at the sentencing phase. Did he, is that the best or maybe the only way to read that? Because I think he said that they had, one reason that he discounted, that he might have discounted it was that they were more emotional. But then the real reason, I think he did say, as you mentioned, that he gave that, the jury's determination great weight, but then explained that based on his view of the facts that the jury, he didn't see how any jury could have come to that conclusion. Does that really say that he thought that they were unable to carry out their duties or that he just viewed the evidence differently than the jury and perhaps offered one reason that that might have been the case? Well, I think it's clear that he did view, he viewed the case and the reasonable sentencing options differently than the jury did, for sure. I mean, he says in the order that there's only really one logical conclusion here and that this case should be death. But it's also true that when I mentioned in my opening, it's a quote from the sentencing order that the jury was unable to carry out their sworn legal obligation during sentencing. So that's the judge's finding, and the only things, the only events or stages of the process that the sentencing order references or alludes to in connection with that finding are what happened in the moments leading up to the delivery of the guilt phase verdict and then this visit to the jury room, and all of which happened before the penalty phase began. So that's what we have to go on, and all of it seems to situate this finding of inability to discharge the jury's legal obligations pre-penalty phase, right before the penalty phase would have started. So you filed a motion for a new trial, right, when this came to light? Well, predecessor counsel did, but yes. And there was a hearing on that motion. There was. Was that an evidentiary hearing? It was not an evidentiary. And if so, what happened? Well, so first, yes, a written motion was filed, raising this among other issues, and as I sort of summarized earlier, asserting that we don't think this ever happened, Your Honor, we were in the room and there was no sign of this. And then, as you say, the judge convened a hearing on the motion, which, again, involved a variety of issues. This was one of them. And defense counsel, trial counsel raised the issue again in the oral argument in connection with the motion. The state never addressed the issue in its response, either in writing or orally, and the judge simply didn't acknowledge it. I guess I'm wondering, like, was there an opportunity for you to develop evidence with respect to this issue? I'm not exactly sure what that looks like. I mean, you can't very well swear the judge into the box, I suppose. But what does it look like, and was there an opportunity? Or what would it have looked like, and was there an opportunity? Well, it's a very interesting question, and it's one that I've tried to think through as well. And I think where I come down is, as you say, the key thing here is this mental impression that the judge formed, right? And I don't know how one would get at that in an evidentiary hearing. So I suppose the motion for a new trial might have been the place, but defense counsel goes there making these assertions, gets absolutely stonewalled by the state and the trial judge, and I think one thing that we can now infer from that or one reasonable inference from that record and that sequence of events is that it sort of formed a tacit admission, right? A tacit admission doctrine under which if somebody says something that a reasonable person would be expected to respond to and they don't respond, it's sort of treated as an admission. And again, here the opportunity was certainly put in front of the trial court to engage with this, both the court and the state, and nobody wanted to. And that has been the story, really, of this case all the way through. Nobody has ever wanted to engage with these issues. So to come back to your question, Judge Usam, I'm sorry I took such a circuitous route. I don't know what additional evidence would have looked like that would have made a material difference in where we are now. So if you couldn't put the judge on the stand, I suppose, I don't know, could you have called the bailiff? Maybe this is ridiculous. Could you have kind of triangulated your proof somehow?  I suppose one could, and the bailiff then would either say, yes, this happened, yes, this set of events happened, or no, it did not, and then we might know a little bit more about it. That strikes me as like that would be good to know, like that would be relevant. It could be, but I think its relevance is limited at this point because whether these things did happen or didn't happen does not dictate whether or not there were constitutional violations. It really only dictates the shape and the type of those constitutional violations. Well, I guess so it might not answer, say, like your critical stage argument, but would it answer your materially false premises argument if you get the bailiff on the stand and he says, no, no, no, it went down just how the judge said it did, or whatever. It was benign. Partially, but the materially false information argument also rests in part on the other claims, the kind of related claims in the sentencing order that there was this outburst when the guilt phase verdict was read. That required the court to clear the court rule. But that likewise, like you could get, you could take evidence on that, right? That sounds like it happened kind of in the open. If it happened, it happened in open court. I think our position on that would be evidence was taken on that because it did happen in open court. A court reporter was there, and given the way things, the way the events unfolded, now right before the guilt phase verdict was announced and it was known that it was coming, the judge issues this admonition to the courtroom that says, look, we've got a verdict, and I don't want any outbursts, or I'm going to, you know, there's going to be trouble, and I want you to know what's going to happen. Once the verdict comes in, I'm going to ask everyone to leave, and then we will sort of proceed from there. And then the verdict gets read, and the judge does exactly what he said he was going to do. But there's no indication that there was an outburst. Our position on this is, having given that kind of an admonition, if somebody had actually engaged in an outburst, one, the court reporter should have captured it, and two, probably the judge would have been provoked to say something. I told you not to do that. Now get out, or something equivalent. But there was none of that. What we have is just a record that looked exactly as you would expect it to look when the guilt phase verdict was read and things were otherwise uneventful. So I don't know there would be anything to be gained by trying to add to the evidentiary record on that. I mean, there is a presumption, there's an obligation under Alabama law that the trial judge ensure that there is a complete record available for review because it's a capital case. And so, if anything, I think the onus was on the judge to make the record if the judge was going to rely on these things. If the judge thought they were so consequential, the judge was in the best position to see to it that the record reflected these events, and none of them are there. I mean, your argument, it seems to me, comes down to a contention that your client was denied his due process rights because the trial judge engaged in an ex parte meeting with the jury, for lack of a better term, made observations which he didn't disclose, and you had no way to challenge any of that before the judge issued his sentencing order. And so, after that, it was too late. I mean, is that essentially the argument? That is most of it, but there's also a very substantial Eighth Amendment component to this, too. And there's a fair amount of overlap, right? A lot of what we would naturally think of as a due process violation in a capital case can also become an Eighth Amendment violation because this set of events and the things that the judge relied upon to discount the 12-0 life recommendation also amount to arbitrary and capricious action. And so that's how we framed it both ways, but I think we have featured the Eighth Amendment piece because the other thing that that then brings in is that the Supreme Court has been very clear that mitigation, mitigating factors, legitimate mitigating factors are to be taken seriously and they are to be given appropriate credit in the final sentencing calculation. And so what ended up happening here, well, let me back up a little bit. Under Alabama law, as it stood when this case was tried, a 12-0 life recommendation was entitled to what the Alabama Supreme Court called great weight. In a case like this one, it was literally the best thing Mr. Shanklin had going for him heading into the sentencing phase. And under Ex parte Carroll and Tomlin, those were cases in which the Alabama Supreme Court reversed overrides because the trial judge had not done enough to justify rejecting a 10-2 or a 12-0 recommendation. So what the trial judge did in this case had the effect of removing what should have been the weightiest mitigating factor from Mr. Shanklin's side of the death-life scale and instead giving it very little weight, whatever that might have meant to the judge. And I think we know from the judge's other comments in the sentencing order that, again, he saw only one rational outcome in this case and thought the jury must have somehow lost its mind to reach the other conclusion. So it's not just due process. It's also Eighth Amendment. But I agree there certainly is some doctrinal overlap there. How can we, or how would you propose that we overlook the judge's statement that he did give the jury's recommendation great weight? Well, I wouldn't ask you to overlook it, but I would ask you to view it in context. It came as part of a recitation of what the judge believed was his duty pursuant to Ex parte Carroll or Tomlin. I can't remember exactly what he was citing there. But then he goes on and says, but there's more to the story in this case. And there's a whole additional section in the sentencing order where he lays out why this case looks more like Ex parte Taylor. But isn't part of that context the fact that, as you just said, several jury overrides had recently been reversed for not giving enough information? So why wouldn't we see that as this judge trying to give a better explanation for why he was making the choice he was making, even while giving great weight to that recommendation? Well, I think it very well might have been his effort to try to. I'm sure it was his effort to try to justify the override. But it's what he said in that part of the order that I think is so consequential. He makes this kind of fact-based comparison to Taylor and says, just like in Taylor, the jurors here observed being emotional. And the key difference between this and Taylor is the judge in Taylor made these observations about emotionality as well, but did not go so far as to say that the jury had become unable to carry out their sworn legal obligation. It didn't transition into legal unfitness the way it appears to have done in this case. But then the final line of this section of the sentencing order is, as in Taylor, it is very likely these jurors were unable to carry out their sworn legal obligation during sentencing. And then he talks about the Alabama Supreme Court having held in Taylor that the trial court permissibly assessed the jury's recommendation, very little weight. A similar situation occurred in this case. So I think a fair reading, the fair reading of that, is that while he said great weight earlier, his additional explanation transitioned great weight into very little weight. And if you read that then in the larger context of the sentencing order, I think that view is further corroborated because, again, this judge seemed to think this jury just had lost it and that there was only one appropriate outcome, only one logical outcome I think is the way he put it in a case like this, and that would have to be a death sentence. Can I ask you one question? This may be like the dumbest question of all time, but with respect to the juror's question, is the sentencing phase going to be public? And the judge is, you know, sort of he goes in there and says, yeah, it's going to be public. Why exactly is it that at least that piece of this is prejudicial? Because it seems like what happened on the heels of that was a unanimous LWOP recommendation. We've never argued that answering the question was prejudicial. That's how the district court— But even doing so ex parte. Like, however it went down, whatever he said to them, it produced, as you just said, the most powerful mitigator you could have you got. True, true. So, I mean, I think as a preferred practice, trial judges should always let the parties know when they've had ex parte communications with juries, and Russian versus Spain talks about that. But I don't disagree that merely answering this question could have been entirely innocuous. And we've really never contended otherwise. The district court denied the claim more or less exclusively on that basis, as if we had argued that. But we never did. The problem was not so much that the jury asked the question and the judge answered the question. It's what the judge said he observed during that exchange that resulted in the finding of unfitness that then set the rest of this— It's not so much— I think you'd be in a different position from my perspective if the judge had disclosed to the parties what he observed when he went in there. Like, listen, I just went in to tell them that this is going to be public, but what I saw in there really troubled me. I don't think they're fit to do what they're going to do. I think whatever, whatever. And then the defense and the government, the state, would have had a chance to do whatever they thought was appropriate to either argue against what the judge saw or something else. I mean, as I view the case, that's the problem. The problem is that you were not told about any of this and you had no opportunity to try to combat it before the judge gave you his reasons for overriding the jury verdict. And by then it's too late. It's too late because the judge isn't going to reconsider. Right, absolutely right. And what it was too late to do was to rescue Mr. Shanklin's right to meaningful jury participation in this process, which Alabama law provided for, and the Alabama Supreme Court took very seriously. So, and as I said, this 12-0 recommendation was really— it appeared to be the best thing he had going for him. And it was only when it was, as you say, way too late, did he find out that, in fact, he was not going to get the benefit. So that, too, I think you can think about it as due process, but you can also think about it as an Eighth Amendment arbitrariness and capriciousness problem because it's a material deviation from the capital sentencing mechanism that Alabama had set up and was running and had put before the Supreme Court in Harris v. Alabama and gotten an endorsement on. So you can't simply remove that key component of the mechanism in a case like this one without telling anybody and not do really consequential damage. Now, maybe this is irrelevant, but do you think it's realistic that if counsel had been informed about this conversation, which I think is most fairly viewed as evidencing the jury's sympathy toward your client, is it realistic at all that they would have, you know, taken whatever dramatic steps you would have needed to handle that, or would they have more likely thought, well, this is good. I think the jury is feeling nervous about doing something that seems too harsh. Well, I think if the judge had come in and said what was said in the sentencing order, that the jury had become unable to carry out their sworn legal obligation during sentencing, then what you have is an unfit jury. And I think at that point, defense counsel, if I were defense counsel, I'd be saying, well, Your Honor, if you're committed to that view, if that is your finding once and for all, then we're entitled to a different jury. We need to send this jury home and impanel a new one because we are entitled to the participation and the judgment of a jury. Wouldn't you more, or not you, but wouldn't counsel have been much more likely to say, this jury isn't unfit. They just asked you if it was going to be read publicly, and you said yes. What's unfit about that? We've had this whole trial. We're about to have sentencing. I wouldn't think that most defendants would want to start over. Well, that's possible. But in that situation, again, if I were defense counsel, I would want a firm assurance on the record from the trial judge that the jury is not really legally unfit, and whatever verdict it renders will actually be treated the way Alabama's scheme at the time required it to be treated, and that was the problem here. Of course, they didn't find out until it was too late. Part of the issue here, too, again, from my perspective only, is that the trial judge is giving his perception of the jury after the guilt phase, which is a very different thing than the penalty phase, and the jury has come back with a guilty verdict. So it's not necessarily the case that being affected by a guilty verdict is necessarily going to make the jury unfit to then pass on sentencing. Right. I see my time is up. You can respond, please. I think that's right as well, and if the judge had simply alerted the parties in a timely way, all of that could have been talked through and some sort of an appropriate resolution could have been reached, and that's what didn't happen here. Thank you. Okay. Thank you very much. Mr. Crenshaw. Yes, sir. Thank you. May it please the Court, my name is Clay Crenshaw, and I represent the state of Alabama. In this case, I first want to talk about the claim that was raised on direct appeal and why that's due def 2254D deference, and then I'll address some of the things that opposing counsel has stated. So the federal district court, when it looked at this claim that was raised on direct appeal, did not apply 2254D deference. The trial court said because the case is so heavily aggravated and lightly mitigated, it doesn't really matter whether deference applied or not. The trial or the federal district court also stated that the court of criminal appeals did not explicitly address the federal component of the claim that was raised on direct appeal, and the federal district court discussed Johnson v. Williams and its holding where a federal court has to presume that the court or that the state court did adjudicate the merits of the federal claim, and, of course, that's subject to rebuttal. So I want to talk about first Johnson v. Williams and why when you apply that case, you can determine that the state court here did not inadvertently overlook that very brief reference to two Supreme Court cases and a conclusory statement that the death penalty or that the death sentence violated a couple of constitutional amendments. And the first reason is the litigation strategy employed by the petitioner in this case. This claim in state court was raised primarily as a state law issue. It was raised on the basis of ex parte Carol, and then at the end of a six-page argument in the conclusory paragraph, two Supreme Court cases are mentioned, Gregg v. Georgia, Eddings v. Oklahoma, and then the conclusory statement is also mentioned. Then in the petition for rehearing in the Court of Criminal Appeals, they don't come back and say anything about, you know, state court, you missed the federal component of this claim. They say you misconstrued ex parte Carol. So the claim continued to be raised as a state law issue, and then that continued in the petition for cert for Alabama Supreme Court, filed in the Alabama Supreme Court. Johnson v. Williams also talks about when the federal component of a claim, there's only a fleeting reference to it. That's also an indication that the state court didn't necessarily inadvertently overlook the federal claim. But the standards for the state law claim and the federal claim are different. So why is there—why do we apply a presumption that the Alabama courts resolved the federal claim? Well, so the claim was raised on the basis of ex parte Carol because apparently the petitioner construed that as more favorable. Sure, he might have thought that was the best argument he had going, but that doesn't mean he didn't raise an alternative federal claim too. And so the federal component of the claim mentions Gray v. Georgia, which is a very lengthy decision that's discussing the Georgia capital sentencing statute. And by the way, the Georgia sentencing scheme is much different than what Alabama had at the time. In Gray v. Georgia, it's discussing where the jury is the senator in that case. And then the appeal goes straight up to the Georgia Supreme Court. So the case is off point. And it doesn't have anything to do with what a trial court is considering after a life without recommendation. Sure, you may have thought that the claim was badly pled and that it should have been denied for the reasons you just stated, but the Alabama courts didn't do any of that. Well, they addressed the claim as it was raised. No, they didn't address the federal claim. I mean—well, I shouldn't put words in your mouth. So is there anything in the Alabama Court of Appeals decision that addresses the federal claim? No. I mean, the federal district court said that.  But under Johnson v. Williams, you know, you can determine that the state court did not inadvertently overlook the federal court. Sure, in certain cases you can do that. And I'm asking you why we would do that here if the federal and state standards are different. Well, there's no federal standard in Gregg v. Georgia or Lockett or Eddings v. Oklahoma, pardon me, that have anything to do with a trial court rejecting a life without parole recommendation. There's no federal standard that was cited for the trial court to consider. Like I said, Gregg is completely— But what was—forget this for a moment, for a moment. Let's put aside the cases that were cited to the Alabama Court of Appeals. What was the argument made? Why did Mr. Shanklin argue that his federal rights had been violated? He cited Gregg. No, I know. Forget the cites. What did he say in that short paragraph at the end? What did he say? Why were his rights violated? The discretion of the sentencing body must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. Okay. It was just—it was a sentence pulled out of Gregg, which— and the sentence pulled out of Eddings has to do with a trial court not being able to consider non-statutory mitigating evidence. So there's no real federal kind of corollary to what is going on here with the state court because the state court here is the senator and under the statutory scheme then in place in Alabama, all he had to do was consider the jury's verdict, which he did. Gregg v. Georgia is talking about a completely separate sentencing scheme. And my point in all this is that under Johnson v. Williams, you have to presume that the state court did adjudicate this on its merits. Okay. My—maybe I'm missing something, but my—correct me if I'm wrong— my understanding had been that the Alabama court resolved the claim— resolved this claim on the merits by concluding that he hadn't established the factual premise. And that would be true, I think, under—relevant under federal or state law. Am I incorrect about that? No, that's true. And the main part of the sentencing order is to consider all of the aggravating circumstances. I mean, that's the federal constitutional requirement here is to write out, you know, your findings on all of the aggravating circumstances to do the same on the mitigating circumstances, which none were found. And that's the constitutional requirement, that there be this individualized sentencing determination. And the only mitigating circumstance was the fact that this person had a good family that supported him and also that he was a good husband and father. And that was given some weight, even though he had two girlfriends at the time he testified in this case. So, yes. And the sentencing order itself just discusses about how this crime was so deliberate, how this person looked for a co-defendant for a couple of days, was looking for a gun, sent his girlfriend in to buy marijuana from these two people who he knew he was going to rob and kill at that point. So, yes, I do agree with that. So, I mean, my conclusion on this point is that 2254D deference does apply. Now, to some of the things that were raised, so there was a motion for a new trial. Let me ask you this question. How, and it can be the state or it can be the defendant, depending on which way the trial judge's observations go. How is either side supposed to address, combat, challenge a trial judge's observation of the jury during this sort of meeting to explain to them that the penalty phase would be open if the trial judge doesn't explain what he did or what he saw before he issues the sentencing order? Right. Tell me how that's supposed to work. I'm mystified. So, there was a hearing at the motion for a new trial. Right. And what did the trial judge say about what it did and why it was okay to do that? Well, he didn't say anything. Right. That's why I'm mystified. So, but what could have been done and what wasn't done, there was an opportunity, and there's a reference in the sentencing order where the bailiff came to the trial judge. And when the trial judge spoke to the jury, apparently some of the jurors said, are the results of the penalty phase vote going to be public? And so the trial judge comments on that, and he also construes that as meaning that some members of the jury were concerned that the penalty phase proceedings would be public. The way to present evidence on that. Yeah, but it wasn't just that. He relied expressly on his visual perception of the jurors when he went into the jury room. If the judge doesn't disclose that ahead of time as a relevant factor that he's considering, how are the parties supposed to be prepared to address it? He said there was a look of consternation. Yes, but he only said that when he issues a sentencing order. He doesn't tell the parties when they come in to argue at the sentencing hearing, hey, I had this interaction with the jury. I saw this observation. I think there's a problem. And then the parties can argue one way or the other. But when you don't disclose that, how are – I mean, imagine the position the state would be in if the tables were reversed and the jury had come back 12-0 for a sentence of death. And the judge says in the sentencing hearing for the first time, when I went in there to tell them that the penalty phase was going to be public, I saw a look of consternation. I didn't think they'd be prepared. I didn't think they could carry out their duty. So I'm overriding. What do you think the state's reaction would be to that? Well, here, I mean, the bailiff – You think everything's okay? We accept your decision, Judge? You observe what you observed and we're prepared to go along with that decision? No. They would have tried to challenge it some way, somehow. They would have said that's illegitimate. You can't rely on something that you haven't told us about and something we have no opportunity to address before you make a decision. That's the essence of due process, the notice and opportunity to be heard. I mean, that has stuck with me from the moment I started reading this case, and I can't get away from that. And nobody's addressed it. Like when they had the hearing afterwards, I think, as Mr. Wesley said, or as Waverly said correctly, the trial judge didn't address it and the court of appeals didn't address it. So everybody's like, shuffle this away. Nobody wants to talk about what happened and why it was done and whether it was right or wrong and whether it prejudiced anybody or didn't prejudice anybody. Well, the court of criminal appeals did say that there was nothing in the record to show that it didn't happen. But my point is not that it didn't happen. I'm giving you the possibility that under Alabama law, if a judge sees that sort of problem from the jury, he can use it as a basis to override. But you've got to tell the parties if it's an ex parte communication that the parties don't know about. If the judge sees it in open court, that's one thing. But if the parties don't know that you've met with the jury and that's the observation that led you to have concerns, they have no way to be able to argue against it until it's too late. The bailiff could have testified about what he observed. What do you think the bailiff would have said? A bailiff who works for a state judge. The judge is lying. I saw the jury. The jury was perfectly fine. And then what do you do? And then what do you do? You put the judge on the stand. Impossible. The bailiff could have talked about his reaction with the jury. Who was complaining? Who was asking the question? Let's play this out. The bailiff says, I didn't see. I've been to a couple of these death penalty cases. I didn't see anything unusual. Next step, what happens next? Something did happen because the bailiff came and got the jury. No, no, no, no, no, no, no. We're playing. I'm running your hypothetical through. Right. The bailiff gets called at the evidentiary hearing. And the bailiff says, didn't see anything unusual. Can't corroborate what the judge said. Now what happens? Tell me what the trial judge does. It's on the record that the bailiff came and got the judge. Tell me what the trial judge does with that contrary testimony then. Now the bailiff, the sentencing order says the bailiff came and got the judge. So the bailiff could testify about what happened for him to take that action. Yeah, but I'm telling you that I'm trying to pose to you a pathway of what happens at this evidentiary hearing. You're right. If the bailiff corroborates what the judge said, that's one pathway and everything will probably be closed down. But what happens if the bailiff testifies contrary to the judge's observation? What's the next step in this evidentiary proceeding? You can call every juror. Under Alabama law, you can call jurors to testify about their verdict. No, not about the verdict. Of course you can't. No, no. I'm talking about the look of consternation. Who was concerned about the verdict? So you're going to ask the jurors. When the judge came in to talk to you about the penalty phase being public, did you have a look of consternation on your face? You're going to ask them that question? Who was concerned about the penalty phase being public? Who was concerned about the results of the penalty phase vote? That's a simple question, and they would have to answer. You are talking about a proceeding which I don't think has any semblance to reality on the ground. There's no way that a judge would have held that sort of a hearing and allowed judges to impugn his statement about what he saw. What do you think the judge would do if every juror came in there and said, I didn't have any concern. Yeah, I just wanted to know if it was public or not to see if my name would be in the paper, but I didn't have any concern. How about you? No, I had no look of consternation. I was perfectly fine. I did my duty. We rendered a guilty verdict. I was ready for the penalty phase. So every juror comes in in my hypothetical and the bailiff, too, and contradicts the judge. What does the judge do next? Well, I mean, I don't know at that point. I mean, people are coming in to testify under oath, and they're going to have to test. I mean, there are some jurors. You're going to put the judge on the stand, or the judge is going to make a credibility finding, Hey, I was there. I know what I saw, so I find these people unbelievable as a matter of law. They're not credible, so my finding stands. But some of the jurors were not involved in this, and presumably they heard it, and they could testify. So how many jurors had a look of consternation on their face? Or how many expressed? No, how many jurors did the judge say had a look of consternation on their face? What does several mean? One, two, three, nine? No, I don't think it's nine. We don't know any of that. That's true. Several, to me, means two or three. Listen, he may deserve the death penalty, but in capital, I speak only for myself, but in capital proceedings, you've got to dot the I's and cross the T's. I've never seen a case like this. No, this judge did that, and this, whether they were non-emotional jurors or not, the judge is the final senator in this case. This person wasn't sentenced to death because of these jurors. He dotted the I's and crossed the T's by not telling the parties that he had an ex parte communication with the jury and that he went in there and saw them and that he saw consternation on their faces. That's crossing. This issue was speed up in a motion for a new trial. They could have asked for another judge to hear the motion for a new trial. And he didn't address it. So I don't want to keep arguing with you, and I appreciate your patience with me. So I've taken you a long way through your argument. I want to give you a couple of more minutes to finish up. Well, again, this could have been litigated. It was teed up at the motion for a new trial. There was never any kind of request to call witnesses. There was obviously never any kind of ruling denying that request. And as far as this tacit admission doctrine, I've never heard of that being applied against the judge for not commenting on, I mean, the motion for a new trial raised 40 different claims. So he certainly didn't comment about every claim. On the Carroll and Tomlin cases that were mentioned very briefly, and I'll wrap this up, those cases don't really have anything to do with the trial court rejecting the advisory verdict. Both of those cases involve legal error, and an appellate court rewing the aggravating and mitigating circumstances. In Carroll, a trial court improperly minimized the finding of a mitigating circumstance. I think Carroll was 17 at the time of the murder. There were four mitigating circumstances found as opposed to one aggravating circumstance. So that's why that case got reversed, based on legal error. In Tomlin, the trial court considered the other co-defendants' death sentence in sentencing Tomlin to death. So again, had nothing to do with anything about the jury's recommendation. And with that, I'll just ask for this court to affirm the lower district court's ruling. All right, thank you very much. Mr. Lieberman? Good afternoon. May it please the court, Dave Lieberman. We haven't heard any argument about AEDPA, but you're certainly free to address the issue if you would like. Yes, Your Honor. I'll be brief in light of the fact that AEDPA has not gotten any airtime this afternoon. If this court finds that any of Mr. Shanklin's claims have been adjudicated on the merits in state court, the United States' position is AEDPA 2254-D1 applies, and that this court should reject the constitutional attack, whether it's a full-scale attack or framed as constitutional avoidance, that Mr. Shanklin has made here. We have cited six circuit courts, three before Loperbright, three after Loperbright, that have now issued published decisions confirming that AEDPA comports with Article 3. Two main points on that. AEDPA does not impair in any way this court's ability to determine what federal law or specific constitutional provision means. Nothing requires this court to adopt as binding authority anything that the Alabama court said or did with respect to those claims, and AEDPA does not dictate a particular result granted or denied in this case. We view Loperbright— Right. Your view is that it provides a restriction on the remedies that the writ can provide for a state court prisoner. Correct. Correct, Your Honor. And Mr. Shanklin's arguments to this court have hinged his attack on AEDPA on Loperbright. This court said in an unpublished, but we view it as a persuasive decision last year, debates that this claim is, quote, not debatable, and that's because Loperbright was dealing with an entirely different regime under the Administrative Procedures Act. A couple last points from the supplemental brief from Mr. Shanklin that I wanted to respond to. There's nothing in Article 3 that mandates that federal courts conduct de novo review of habeas claims. There are any number of doctrines in federal law that untether an alleged constitutional violation with a remedy. The best one to my mind being Section 1983. A civil plaintiff is not entitled—is only entitled to a remedy if he or she shows that the state official not just violated law, but violated clearly established law. Again, from my own practice in federal criminal law, exclusionary rule, faith exceptions, Rule 52 of the Federal Rules of Criminal Procedure. Nothing in Loperbright uproots any of that. In fact, Loperbright, pages 394 and 395, talk about how Congress can mandate deference. So for all of the reasons that the other circuits have held, including notably the three circuits that have most recently rejected this claim, including the 6th, the 8th, and the 9th, we would ask this court to do the same. One last plea on this, if this court concludes that the AEDPA issue is before it, the United States asks that this court issue a published decision resolving it one way or another. The last time I checked, this claim is being raised in all the districts in this circuit. I am due back here in August in another case to present the exact same argument that I'm presenting this morning. So I think litigants, district judges, everyone would benefit from this court resolving this in a published decision one way or another. Unless the court has any other questions, the United States will rest on its intervener brief. All right. Thank you very much. Thank you. Just a very brief rebuttal, just a couple of points, if I may. With respect to the state of Alabama's contention that Greg v. Georgia has nothing to say to or about an override scheme like the one in Alabama, I think the Alabama Supreme Court would be surprised to hear that because in Taylor and other cases, it has cited Greg, Eddings, and many of the Supreme Court's other Eighth Amendment cases repeatedly. And it's just simply not accurate to say that Greg, which is one of the absolutely foundational cases in contemporary Eighth Amendment doctrine, has no influence over the operation of a system like Alabama's. The state also emphasizes, both in its brief and it came up again here today, that the judge was the final sentencer. The judge had final discretion to sentence. And that's true, but not entirely. It was not unfettered discretion. It's not that simple. The jury had a real role under Alabama's override scheme. It was specified by statute, and the Alabama Supreme Court clearly took it very seriously. That's how we got the reversals in Carroll and the following year in Tomlin. And what they show is both that the jury had a real role, and particularly when it produced a unanimous or a near-unanimous recommendation. It was expected to be very difficult for a trial judge to set that aside and instead enter a different judgment. And the other thing that we see in both Carroll and Tomlin is that the judge's exercise of that sentencing, that sort of final sentencing authority at the sentencing hearing, was reviewable on appeal. Because otherwise, Carroll and Tomlin would not have turned out the way they did. So it's not as though the judge had absolute, unlimited, unfettered, unreviewable discretion. And in a case like this, that's the kind of review that should have happened, but it did not because no one was interested. Finally, on the Loper-Bright Article III question, as we indicated in our supplemental reply brief, we continue to believe that this case does not and should not turn on that issue. It's in the brief. It's in our standard of review section of our brief because it's a percolating issue. And at some point, Mr. Shanklin might find himself in a position to want to benefit from something that the Supreme Court might do one day. And so it was incumbent upon us to make sure that we preserved his ability to do that. But we do not think this case can or does or should turn on the outcome of that question. If the Court has no further questions for me. I've got one, if you don't mind. If we could just circle back briefly to this, the motion for new trial. I mean, I take it you don't dispute as a general matter that it is your obligation to develop facts relevant to the claim that you intend to bring. No. And this is, I mean, this is a goofball situation, I agree, that where we've got, you know, sort of the judge effectively as a witness. But how do you answer Mr. Crenshaw's responses to Judge Jordan that goofball as it may have been, there were ways to develop facts relevant to this claim? Perhaps not perfect, but bailiff, jurors, not about the verdict but about their impressions of the publicity of the sentencing hearing or whatever. And as he said there at the end, perhaps asking for a different judge to decide this motion for new trial. So none of that's perfect, but they are avenues. And without, I don't want you to disclose any client confidences, of course, but I can't, so far as I can tell, they weren't even explored. Nothing was tried. Well, I'm not sure that's quite fair to trial counsel. They did raise this, both in writing and orally at the hearing, and there was absolutely no appetite for any of it. Yeah, but I guess I mean, like, surely they must have understood that we're in kind of like bizarro world where the judge to whom I'm making this oral argument is the witness I'd really like to get at. But if I can't do that, maybe I should try to triangulate this somehow differently. Well, I think my take on that is maybe a little bit different. And thinking about might there have been some expansion of the record, I continue to return to what would have been the utility of that. Because the thing that really mattered here was the impressions the judge made and the finding he made from those impressions. And I don't know, you could call every juror and violate whatever Alabama's version of Rule 606 is. And I don't know that none of that moves or impacts the fact that the judge reached these mental impressions and then resolved this question in his own mind that this jury had become unfit to carry out its legal obligation. That was the problem. So I don't know what more facts would have done to address that or to change it. Wouldn't it have made a difference if you had, however unlikely, if you had the bailiff and all the jurors saying, no, there was, for the bailiff, I didn't see any emotion. For the jurors, no, that was just a basic question. And I agree with, I think, what Judge Jordan was suggesting, that that would probably be very irritating, to put it mildly, to the judge. But at least then you would have a record to respond to when making this claim that he acted inappropriately in that viewpoint. Right, but I think, again, I go back to what would be the utility of that record. What would we be trying to do then, argue that the weight of the evidence was against the mental impression that the judge formed? I can't imagine that would be— Or argue that if you had moved for a different judge and he had denied that recusal request, you could have appealed that recusal request, right? And said, he says this thing happens. There's no evidence that it did. Obviously, this was coloring his view. So we need someone else to look at this. Well, I think on the no evidence that it did point, I would also return to the fact that under Alabama law, the judge had a responsibility to send up a complete record. And the Alabama Court of Criminal Appeals, under 13553A, I want to say, was obligated to check, among other things, to ascertain whether the trial court's findings with respect to aggravating and mitigating circumstances were supported by the evidence. So that still could have happened under the record that went up to the Court of Criminal Appeals. And had they undertaken that review, then they only had one choice under the statute, and that would have been they had to remand. So I think it's, again, unfair to put all this on trial counsel given the efforts that they made and the fact that really there was no or very limited utility to developing this extra information because the real thing that mattered was this mental impression formed by the trial judge. Thank you. All right. Thank you all very much. It's been helpful. We're in recess.